Trippe, Judge,
concurring.
The plea in this case makes the issue whether a married man, whose marriage is known to the female alleged to be seduced, can commit the crime of seduction by persuasion and promises of marriage. The words of the law are: “If any person shall, by persuasion and promises of marriage, or by other false and fraudulent means, seduce a virtuous unmarried female, and induce her to yield to his lustful embraces, and *allow him to have carnal knowledge of her, such person, on conviction, shall be punished,” etc.
The first count in the indictment charges the seduction to have been accomplished by persuasion and promises of marriage. The second count charges “other false and fraudulent means.” The third count charges both persuasion and promises of marriage, and other false and fraudulent means. The plea was filed to all the counts, and agreed by the State to apply to each and all. The’State demurred to the plea, the demurrer was sustained, and the plea disallowed as to either or any of the counts. Thus the Court below held that a married man, wh»se marriage- was known to the alleged victim, could commit the crime of seduction by persuasion and promise of marriage. That judgment is brought here for review.
What was the object of the statute? It was not to make adultery or fornication an offense and punishable. That had been done before. It was not to make fornication, when committed by persons between whom there existed an engagement to marry, more penal than it already was, simply because of that engagement. The statutes of some of the States do this, but in each such statute, or in the decisions construing them, it is provided or held that the man must be unmarried, or not known to the woman to be married. The great object of those statutes, and *219 of ours, and of all such law givers, must have been to prevent the sacred promise of marriage — the promise to become one— the promise of taking the vow of love and fidelity and protection for life — from being made a means of destroying the character, the peace and happiness of one who accepts and confides in that promise. It was to protect the honor and purity of woman from an attack by a seducer, armed with all the power and influence that such a promise must give.
If a woman be in danger from a seducer, the power and chances of that seducer are greatly increased when she surrenders her heart, and the strong bond of promised marriage exists between them. Just there this wise and salutary law — salutary if not perverted — steps in and says to the lustful outlaw, *“If you make the promise to enter into that relation which the law of God and man sanctions, approves and invites, and public policy demands — an instrument to debauch virtue and ruin her who has trusted to it — the brand of the felon shall be upon you.” I repeat, such a law is wise, prudent and salutary. It punishes with severity a most odious crime, and protects virtue where -its defenses are overreached by the false pretences or fraudulent artifices of the spy and the traitor. Rut to say that a promise of marriage, no matter by whom made, whether the man be married or not, whether the promise be impossible or not, shall or can be the means of seducing a “virtuous unmarried female,” and shall be punishable, in case of such a seduction, with the same ignominious penalty, is to confound all gradations of punishment, and to vindicate the assumed wrongs of one who leaps to her ruin, as strongly as the wrongs of one who has been cheated, blinded and defrauded to her ruin by falsehood and fraud. No rule of the civil Code grades its penalties on such a basis.
A false and fraudulent promise of marriage, trusted in by the woman, has, doubtless, often been, and may be again, the means of seducing a “virtuous unmarried female;” and though, by her fall, she may draw the finger of scorn upon her, yet the law becomes her avenger and punishes her wrong-doer, because, by his falsehood, she is defrauded to her ruin. But for her, or any one, or the law, to ascribe her wrongs or ruin to a promise which she knezv was both false and impossible of performance; to say she was seduced by listening to a promise as degrading to her by listening to it as to the one who made it; by a promise of a man of what she knew he did not have, is as utterly at variance with the true wisdom of all law and sound morals as it would be for her to claim the sympathy and vindicative protection of the law for yielding herself by a promise of a palace from a pauper, or of a crown from a beggar. As well might she say a bauble or a penny was her price, as that a known barren, worthless, promise won her.
Surely the law does not set up her virtue as of such great worth, that it must be vindicated by such high penalties. But *it may be said that if the law so declares, it matter.*' not what may be thought of its wisdom or the consistency *220 of its logic, it must be administered as it is written. This is true, but it is none the less the duty of a Court to construe and define the meaning of the law when a question for construction arises. The words of the law are: “Shall by persuasion and promises of marriage, or other false and fraudulent means seduce a virtuous unmarried female,” etc. No one can .deny that the “other means,” other than promise of marriage, must be “false and fraudulent.” Those are the very words of the law. “False” means that which is not true, coupled with a lying intent “Fraudulent” is something that will deceive, cheat, mislead, inducing a belief in what is not true and action on such belief. Can it be fairly claimed that all the other means must be false ana fraudulent, believed in by the victim, and she deceived by them, but it matters not whether the promise of marriage was false or fraudulent or believed in, or whether she was deceived by it or not? This would make mere words — words known to be nothing but an empty sound — vox et proeterea nihil, constitute an essential in a most infamous crime. It would only be equaled by that construction of the old English statute making it treason to imagine the death of the King, where it was held, that the owner of an inn called “The Crown,” on urging his son to do his duty, because he would be heir to the Crown, was guilty of treason in imagining the death of the King, for no one could inherit from the King until he was dead. The whole spirit of our law, the reason and the context seem to require the construction, that the promise of marriage must be made under cirsumstances that would not only make it false, but the victim of that promise must be deceived by it. This she could not be if she knew the promise could not be performed.
Again: It is said that the promise might be made by a man who was married and his marriage not known to the woman. What I have said meets this point and implies that by such a promise the crime of seduction could be committed under the law.
*It is further said that the promise might be conditionally made, to-wit: on the event of a divorce, or the expected death of the wife, and a virtuous female misled or deceived by such a promise. The indictment does charge this latter condition, that is, that the death of the wife was expected, ©r it was believed or stated by the defendant to Miss Olivers' that his wife would not live longer than two years, and he would then marry her. I will not dismiss this as was done by a Judge in his reply to a similár point, by the single remark “that such a promise would be void as against public policy, I have no doubt whatever.”
Doubtless such a promise would be void. But a higher ground' may be taken in reply. Such a promise and such negotiations are not only void as against public policy, but the public policy that would allow no woman damages for a breach of a marriage promise so made, still less would vindicate her if she gave up her virtue by means of such a promise, and in such vindication *221 impose a longer term of imprisonment upon the alleged wrong doer than for any other crime save one that is punishable by death or imprisonment for life. The man who would thus act might deserve such a fate, but I do not think that any law or lawgiver would give as a reason for the punishment that he had seduced a virtuous unmarried female. The moral crime against the dying wife might call for any penalty, but hardly any law would punish the act as a wrong against her, who would by her own showing exhibit herself as unworthy of any defender. Least of all, could such a woman thus bartering her virtue, claim to be a “virtuous female” seduced by promise of marriage, and I do not think that such a promise or such a character comes within the scope of the provisions of the law. The man who thus acts, who comes within either class that I have been considering, may be vile and a criminal, he is vile and a criminal, and would be punished on conviction, but not for what he is not and cannot be in such cases, the seducer of a virtuous unmarried female by persuasion and promise of marriage.
But few laws of a similar kind to ours have been brought *under notice in the argument of this case. One statute, that of Wisconsin, excludes all idea, by its very terms, that a married man can seduce by or under a promise of marriage, or that a promise of marriage from a married man can have any agency in seduction. The statute is, “any unmarried man who, under promise of marriage, or any married man who shall seduce,’’etc. The law-makers there did not seem to think such a thing possible as seduction by a married man under a promise of marriage. In New York the statute says nothing of a married man, but provides a punishment for seduction “under promise of marriage.” Under that act it was held in two cases that a married man, known to the woman to be married, cannot be guilty of seduction “under promise of marriage.” The Court in pronouncing judgment say: “To call such an engagement a promise of marriage would be a flagrant perversion of all legal sense and learning.” 1 Parker’s Criminal Reports, 333.
I do not think the Court erred in charging that “the presumption of law is that the female alleged to have been seduced was virtuous, and that presumption remains until removed by proof. She must have personal chastity. If she, at the time of the alleged seduction, had never had unlawful sexual intercourse with man, if no man had then carnally known her, she was a virtuous female within the meaning of the law. If man had then carnally known her, had had sexual intercourse with her, she is not a virtuous female within the meaning of the law.” The proof of lascivious indulgences and wanton dalliances, with other evidence short of direct proof of the overt act, may authorize a jury to infer actual guilt, the illicit act. In the eye of the law a woman is virtuous unless she is guilty of sexual intercourse. She may do wild and wanton things, but unless she be legally guilty, she is legally virtuous. If she does not violate the law, she does not forfeit the protection of the law. Any other standard in law *222 would seem to set up too loose a rule for the guidance of juries, and what would be held by one jury as showing a want of virtue, would be considered by another as ^innocent. If a jury believe from the evidence that the illicit act has been committed, the want of virtue is then shown. This may be shown by circumstances as well as by direct proof.
I concur with my brother McCay as to .the right of the defendant to have had the request in relation to the credibility of a witness given in charge; and the more especially was it his right where his conviction may be had on the uncorroborated evidence of the woman alleged to have been seduced. The statutes on this point, in several of the States and of the United States, require the woman’s testimony to be corroborated. I have found no statute that does not require this, except our own. Where a defendant is thus exposed, he is entitled specially to the right to have all legal and proper principles applicable to the case to be given in charge to the jury. I also concur on the other points in his opinion on which the judgment of this Court is given, and generally in his reasoning thereon, except as to the point wherein I have above expressed a different opinion, and I concur in the judgment reversing the judgment of the Court below, and granting a new trial.